IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**ANTHONY CRUZ,**

    **Movant,**

v.                                       **Case No. 2:19-cv-00650**
                                                **Criminal Case No. 2:18-cr-00004-04**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court is Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.[1] (ECF No. 192). This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 194). For the reasons set forth below, the undersigned respectfully **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 be **DENIED,** and this civil action be **DISMISSED, with prejudice,** and removed from the docket of the Court.

**I.  Procedural History**

On January 17, 2018, Movant Anthony Cruz ("Cruz") was indicted by a federal grand jury sitting in the United States District Court for the Southern District of West

---

[1] The ECF numbers used herein are taken from Cruz's underlying criminal action, *United States v. Cruz,* Case No. 2:18-cr-00004-04.

1

Virginia, Charleston Division ("Sentencing Court") of one count of conspiracy to distribute 500 grams or more of methamphetamine and one count of attempting to possess with intent to distribute 500 grams or more of methamphetamine. (ECF No. 1). On January 29, 2018, Roger L. Lambert ("Lambert") was appointed to represent Cruz on the charges.

On April 6, 2018, Cruz entered into a written agreement with the United States, in which he agreed to plead guilty to conspiracy to distribute 500 grams or more of methamphetamine in exchange for the United States' dismissal of the remaining count against him. (ECF No. 107). In the plea agreement, Cruz acknowledged that his guilty plea exposed him to a term of imprisonment ranging from ten years to life. (*Id*. at 2). He agreed that under the United States Sentencing Guidelines ("USSG") his adjusted offense level, after adding two levels for a gun enhancement, was 36. (*Id*. at 5). Cruz also agreed to "knowingly and voluntarily waive[] his right to seek appellate review of his conviction and of any sentence of imprisonment, fine or term of supervised release imposed by the District Court … on any other ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment, fine or term of supervised release [was] below or within the Sentencing Guideline range determined corresponding to offense level 36," except for the ground of ineffective assistance of counsel (*Id*. at 5-6).

Cruz's plea hearing was held on April 26, 2018. (ECF No. 103). At the hearing, the Sentencing Court asked the Assistant United States Attorney to summarize each paragraph of the plea agreement, (ECF No. 221 at 4–8), after which Cruz affirmed that he understood the agreement and what it required of him. (*Id*. at 8). The Sentencing Court reviewed the charge with Cruz and explained the Government's burden of proof. Cruz then related to the Sentencing Court what he had done that made him guilty of the charge

against him. (ECF No. 221 at 11-15). Cruz further confirmed that he had reviewed the USSG with Lambert, had agreed to a base offense level of 34 with a two-level gun enhancement, and acknowledged his understanding that a final offense level could not be reached by the Sentencing Court until a presentence report ("PSR") was prepared by the Probation Office. (*Id.* at 17-18). Cruz further acknowledged his understanding that he was giving up most of his rights to appeal, as well as his right to collaterally attack the conviction and sentence. (*Id.* at 19). After being advised of all of the rights he was waiving by pleading guilty, Cruz stated that he still wished to enter a guilty plea and that such a plea was entered of his own free will. (*Id.* at 19-23). Accordingly, the Sentencing Court accepted Cruz's guilty plea, finding him to be "fully competent and capable of entering an informed plea, that there is a sufficient factual basis for his guilty plea, that he does understand the nature of the charge against him and the consequences of pleading guilty to it, that he does understand the constitutional and other legal rights he's giving up by pleading guilty, and ... that [the] guilty plea here today is entirely voluntary." (*Id.* at 23-24). The Sentencing Court scheduled a sentencing hearing and directed the Probation Office to prepare a PSR. (*Id.* at 24).

Cruz's sentencing hearing was held on September 6, 2018. (ECF No. 153). The Sentencing Court asked Cruz if he had reviewed the PSR, and Cruz answered in the affirmative. (ECF No. 222 at 3). Cruz further confirmed that he understood the PSR. Lambert objected to portions of the PSR, arguing that the Probation Officer incorrectly described Cruz as the "enforcer" or "muscle" behind the drug-trafficking organization, which did not affect the USSG sentence range, but could affect the Sentencing Court's application of other sentencing factors. (*Id.* at 4). Lambert also contended that Cruz played a minor role in the conspiracy, and his participation was driven by his drug

3

addiction. (ECF No. 222 at 5-6). Both of Cruz's objections were overruled by the Sentencing Court. The Sentencing Court reviewed the statutory penalties with Cruz, noting that his term of imprisonment ranged from ten years to life. (ECF No. 222 at 8-9). The Sentencing Court calculated the USSG sentence range, which began with a base offense level of 34. (*Id.* at 9). Cruz received the anticipated two-level enhancement for possession of a firearm, making his offense level 36. This level was then reduced by three levels to account for Cruz's acceptance of responsibility, resulting in a total offense level of 33. (*Id.* at 9). Cruz's criminal history category was determined to be VI, which combined with the total offense level of 33, corresponded to a USSG sentence range of 235 to 293 months. (*Id.* at 9-10). No objection was raised by either party to the Sentencing Court's calculations under the USSG. (*Id.* at 10).

 Both parties were permitted to speak before the Sentencing Court imposed the sentence. (ECF No. 222 at 10-11). Lambert requested that the Court vary downward and give Cruz the lightest sentence available, which was ten years' imprisonment. (*Id.* at 11). Lambert emphasized Cruz's minor role in the conspiracy and his addiction, arguing that Cruz was a drug addict, not a drug kingpin, and the USSG sentencing range of 20-25 years was extremely severe under the circumstances. Cruz then spoke, expressing his remorse for committing the crime and disrespecting his family. (*Id.* at 12). Cruz vowed to rehabilitate himself in prison, stating that he intended to take classes and learn how to control his addiction. After listening to the statements, the Sentencing Court varied downward and imposed a sentence of 168 months' imprisonment, which was "well below the lowest end of the guideline range by about more than five years." (*Id.* at 13). The Sentencing Court explained that while Cruz's involvement in the conspiracy was driven in large part by his addiction, Cruz still took part in an extensive methamphetamine

4

distribution conspiracy and possessed a firearm during the drug trafficking offense. The Sentencing Court reminded Cruz that his plea agreement waived most of his right to appeal, but informed him that if he did wish to appeal, the written notice would have to be filed within fourteen days, or he would lose his right to appeal. (ECF No. 222 at 17). Cruz affirmatively indicated that he understood. Cruz asked if he could say something else, which the Sentencing Court allowed. Cruz reiterated his intention to better himself while incarcerated. (*Id*. at 19-20).

On September 5, 2019, Cruz filed the instant Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, asserting a claim of ineffective assistance of counsel. (ECF No. 192). In particular, Cruz stated that he "had issues about the drug amount and how he was characterized as a major participant in the alleged conspiracy." (*Id*. at 3-4). According to Cruz, Lambert "would not heed" Cruz's concerns and "brushed aside his duty to, at a minimum, file a notice of appeal." (*Id*. at 4).

On September 17, 2019, the Court ordered Lambert to file an affidavit responding to Cruz's claim. (ECF No. 199). Lambert timely filed the affidavit, and on November 4, 2019, the United States responded to Cruz's § 2255 Motion, explaining why Cruz was not entitled to relief . (ECF Nos. 203, 204). Cruz was given thirty days to reply to the affidavit and response. (ECF No. 205). He subsequently requested and was given extensions of time to reply. (ECF Nos. 212, 220, 227). Ultimately, the Court determined that an evidentiary hearing would be required, because the record did not conclusively show that Cruz was not entitled to relief. See *United States v. Runyon*, 983 F.3d 716, 732 (4th Cir. 2020), *as amended* (Feb. 12, 2021). An evidentiary hearing was scheduled, canceled, and rescheduled on several occasions due to COVID-19 quarantines, but was finally held on February 23, 2021. (ECF Nos. 239, 242, 244, 245, 246, 247. 249).

## II. Movant's Ground to Vacate, Set Aside, or Correct His Sentence

Cruz asserts one ground in his motion—that Lambert provided ineffective assistance of counsel by failing to file an appeal. (ECF No. 192). Cruz states that he "had legitimate issues to pursue on appeal, but counsel did not file a notice of appeal." (*Id.* at 2). He identifies those issues as "the drug amount" and "how he was characterized as a major participant in the alleged conspiracy." (*Id.* at 3-4).

## III. Relevant Evidence

In addition to the plea agreement and the transcripts of the plea and sentencing hearings, all of which are in the record, the undersigned considered the following information.

### A. *Lambert's Affidavit*

In his affidavit, Lambert testified that he met with Cruz briefly after the sentencing hearing and discussed his appellate rights. (ECF No. 203). According to Lambert, Cruz did not communicate a belief that there were legitimate issues that could be pursued on appeal. Lambert further denied that Cruz instructed him to file a Notice of Appeal. (*Id.*).

### B. *Testimony of Cruz at Evidentiary Hearing*

Although the undersigned considered all of the testimony provided at the evidentiary hearing, only the most relevant testimony is discussed herein. Cruz was the only witness to testify on his behalf at the hearing. He stated that Roger Lambert was appointed as his trial counsel, and after consultation with Lambert, Cruz decided to enter a guilty plea to one count of the indictment. (ECF No. 256 at 6). Cruz testified that he had concerns about the length of the sentence he would receive; specifically, in relation to the Government's description of him as the "muscle" in the conspiracy and, of greatest concern, due to the gun enhancement. (*Id.* at 7). Cruz understood that his plea agreement

6

included a two-level firearm enhancement, but he believed that he could still object to the enhancement at the sentencing hearing. (ECF No. 256 at 7).

Cruz stated that he was physically present at the sentencing hearing. (*Id.*). He recalled the Sentencing Court discussing his right to file an appeal, and when the hearing concluded, he recalled being taken to a holding cell. (*Id.* at 8). Cruz testified that Lambert appeared shortly thereafter, and they discussed Cruz's impression that Lambert had not defended him well at the hearing. (*Id.* at 9). Cruz indicated that he was very disappointed to receive a 14-year sentence, instead of the minimum sentence of ten years. (*Id.* at 9-10). He thought that Lambert would object to the gun enhancement at the hearing, but Lambert had not done so. (*Id.* at 10-12). Cruz testified that he told Lambert to file an appeal on his behalf and felt that Lambert understood the directive. (*Id.* at 13). Cruz also testified that when he did not hear from Lambert again for a week or so, Cruz filed his own Notice of Appeal. (*Id.* at 12). Cruz stated that he attempted to contact Lambert by telephone on several occasions, but got no answer. He also asked his relatives to contact Lambert for him, but they were unequally unsuccessful, although they attempted to reach Lambert by telephone and email. (*Id.* at 14-16).

On cross-examination, Cruz testified that he read the plea agreement and reviewed it with Lambert before signing it. (ECF No. 256 at 20-21). Cruz acknowledged that the plea agreement contained a stipulation of facts, which included the fact that two guns were found near Cruz when he was arrested for conspiracy to distribute methamphetamine. (*Id.* at 21-22). Cruz conceded that he waived his appellate rights as part of the plea agreement. (*Id.* at 23-24). With respect to the sentencing hearing, Cruz acknowledged that his sentence range under the USSG was 235 to 293 months of imprisonment, and that the Sentencing Court varied downward, imposing a sentence of

7

168 months' imprisonment. (ECF No. 256 at 25). Cruz testified that despite the downward variance, he was still unhappy because Lambert failed to challenge the gun enhancement. (*Id*. at 25-26). However, when asked, Cruz admitted that he told the Sentencing Court that he was satisfied with Lambert's representation. (*Id*. at 27). Cruz reiterated that he asked Lambert to appeal the sentence, but never mailed any written correspondence to Lambert confirming his desire to appeal. (*Id*. at 30).

On redirect examination, Cruz agreed that when he expressed satisfaction with Lambert at the sentencing hearing, the issue of the firearm enhancement had not yet been discussed. (ECF No. 256 at 32). Cruz testified that based on his discussion with Lambert after the sentencing hearing, he believed Lambert was going to file a Notice of Appeal. (*Id*. at 33-34). On recross examination, Cruz acknowledged that Lambert had raised objections to the PSR, particularly over Cruz's role in the conspiracy. (*Id*. at 36-37). Cruz further conceded that when he filed his § 2255 petition, his complaints about Lambert's performance were limited to Lambert's failure to effectively argue a decrease in the drug amount attributed to Cruz and his minor role in the conspiracy. Cruz admitted that he did not mention the issue of the gun enhancement in his § 2255 motion. (*Id*. at 37). Finally, on questioning by the Court, Cruz could not explain his failure to raise concerns regarding Lambert's performance, or the gun enhancement, when the Sentencing Court allowed him to speak prior to imposition of the sentence. (*Id*. at 38-39).

### C. Testimony of Lambert at Evidentiary Hearing

Lambert testified that he has been a licensed attorney since 2008. (ECF No. 256 at 42). He spent six years as a prosecuting attorney in Fayette County, West Virginia then went into private practice. (*Id*.). Lambert stated that he performs federal criminal defense work as part of his practice and was appointed as a member of the CJA panel to represent

Cruz. (*Id.*). Lambert indicated that Cruz decided to accept a plea agreement with the United States in April 2018 after he and Lambert had reviewed and discussed the terms of the agreement on several occasions. (ECF No. 256 at 42-43). Lambert specifically recalled telling Cruz that the Sentencing Court would have to impose a sentence of at least ten years. They also reviewed the stipulation of facts and discussed the USSG sentence range. (*Id.* at 43-44). Lambert confirmed that, in the plea agreement, the parties stipulated to a USSG sentence calculation, which included a two-level firearm enhancement. (*Id.* at 44). Lambert testified that Cruz did not raise any concerns about the gun enhancement at the time. (*Id.* at 45). Lambert explained to Cruz that as long as the Court sentenced him within the USSG sentence range associated with his total offense level, Cruz would not have grounds to appeal the sentence. (*Id.*). Lambert reiterated that he spoke to Cruz about the plea agreement on several occasions and spent nearly an hour with him on the day before the plea hearing. (*Id.* at 46).

Lambert confirmed that he represented Cruz at the plea hearing. (ECF No. 256 at 48). Lambert recalled the Sentencing Court reviewing the appellate waiver provision of the plea agreement, and Cruz acknowledging his understanding of the provision. (*Id.* at 49). Lambert indicated that, after the plea hearing and before the sentencing hearing, he met with Cruz to discuss objections he would file to the PSR. (*Id.* at 50). Lambert stated that the objections primarily related to the size of Cruz's role in the conspiracy. (*Id.* at 50-51). At the sentencing hearing, the Sentencing Court overruled Cruz's objections, but did give Cruz a downward variance of more than five years below the bottom of the USSG sentence range. (*Id.* at 51).

Lambert recalled that after the sentencing hearing, he went to the holding cell to meet with Cruz. (ECF No. 256 at 52). Their interaction lasted only about five minutes, and

they spoke primarily of the downward variance Cruz had received. (ECF No. 256 at 52). Lambert stated that Cruz did not seem upset and said that he was going to use the time in prison to better himself and become educated. (*Id.*). Lambert felt the conversation ended on a very positive note. When asked if Cruz ever requested that Lambert file a Notice of Appeal, Lambert unequivocally denied that such a request was made. (*Id.* at 52-53).

On cross-examination, Lambert conceded that he did not make any notes of his post-sentencing meeting with Cruz. (*Id.* at 54). Lambert indicated that he did not believe Cruz had any grounds for appeal and told Cruz his feelings on the subject, but added that if Cruz had requested an appeal, Lambert would have filed one. (*Id.* at 56). Lambert repeated that his objections to the PSR were related to the description of Cruz as "muscle," and Lambert did not believe Cruz had any valid ground to challenge the gun enhancement; particularly, given the stipulations in the plea agreement. (*Id.* at 57-60). Lambert again testified that Cruz did not convey any interest in an appeal and did not ask Lambert to file one. (*Id.* at 60).

## IV. **Standard of Review**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding. *Wall v. Kholi,* 562 U.S. 545, 552-53 (2011). To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. The burden of proof in a § 2255 proceeding rests with the petitioner, who must establish his claims by a preponderance of the evidence. *Miller v. United States,* 261 F.2d 546, 547 (4th Cir. 1958).

As stated, Cruz attacks his sentence on the ground that his Sixth Amendment right to the effective assistance of counsel was denied at the appellate stage of the proceeding when Lambert failed to file a Notice of Appeal. (ECF No. 192). The Sixth Amendment to the United States Constitution guarantees every criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by meeting the requirements of a two-pronged test. *Id.* at 687. This two-prong test requires the defendant to show that his counsel's performance was objectively unreasonable, and that the defendant was prejudiced by counsel's deficient performance. *Id.* The Fourth Circuit has long held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993); *see also United States v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000); *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (The "failure to file a requested appeal is *per se* ineffective assistance of counsel, irrespective of the possibility of success on the merits."). This principle remains true even where a criminal defendant has accepted a plea agreement containing an appeal waiver provision, or there is a possibility that an appeal may result in the defendant receiving a higher sentence. *United States v. Glover*, 363 F. App'x 989, 990-91 (4th Cir. 2010); *United States v. Poindexter*, 492 F.3d 263, 271-73 (4th Cir. 2007) ("[A]n attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests."); *Monroe v. United States*, No. 3:10-cv-00866, 2011 WL 7021200, at *9 (S.D.W. Va. Nov. 4, 2011), *report and recommendation adopted by* 2012 WL 112552

(S.D.W. Va. Jan. 12, 2012). "Moreover, even if the defendant fails to clearly instruct counsel to note an appeal, counsel must still consult with the defendant about an appeal under certain circumstances." *United States v. Malone,* 442 Fed. Appx. 864, 866 (4th Cir. 2011) (citing *Roe v. Flores–Ortega,* 528 U.S. 470, 478 (2000)). As the United States Court of Appeals for the Fourth Circuit explained in *Malone:*

> Specifically, counsel is required to consult with a defendant "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Consulting entails "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."

*Id.* (quoting *Flores–Ortega,* 528 U.S. 470 at 478–80).

To establish prejudice, a defendant need only show a reasonable probability that, but for his counsel's failure to consult with him about an appeal or follow the defendant's directive, an appeal would have been filed. *Id.* If a defendant's counsel runs afoul of this rule, the proper procedure is for the district court to vacate its previous judgment, enter a new judgment from which the defendant may file an appeal, dismiss any remaining claims in the § 2255 motion without prejudice, and appoint counsel to assist the defendant on direct appeal. *United States v. Killian*, 22 Fed. Appx. 300, 301 (4th Cir. 2001); *Aldana v. United States*, No. 1:09cv461, 2010 WL 2860527, at *2 (W.D.N.C. July 19, 2010); *see also Peak*, 992 F.2d at 42 (instructing district court to vacate movant's judgment of conviction and enter new judgment from which appeal could be taken).

## V. Discussion

Cruz testified at the evidentiary hearing that he asked Lambert to file an appeal. Cruz stated that he was disappointed that his sentence was fourteen years, rather than the minimum statutory sentence of ten years. Cruz recalled that he had expected Lambert to

12

challenge the gun enhancement at the sentencing hearing and was unpleasantly surprised when Lambert failed to raise an objection. Cruz indicated that he expressed this disappointment to Lambert during their post-sentencing conference and, at that time, requested Lambert to file an appeal. In his testimony, Lambert unequivocally denied that Cruz asked him to file an appeal, or that Cruz expressed disappointment with his sentence. Lambert recalled that the subject of an appeal was raised during his brief conversation with Cruz after the sentencing hearing, but only to the extent that Lambert noted the lack of grounds for an appeal given that the sentence imposed on Cruz fell well below the USSG sentence range associated with Cruz's total offense level.

"In assessing the credibility of witnesses, trial courts consider 'variations in demeanor and tone of voice.'" *Rahman v. United States*, 7:08-CR-126-D, 2013 WL 5222160, at *5 (E.D.N.C. Aug. 27, 2013) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)). "In addition, '[d]ocuments or objective evidence may contradict the witness's story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.'" *Id*. (citing *United States v. Marcavage*, 609 F.3d 264, 281 (3d Cir. 2010)). "Additional considerations can include the witness's motive to lie and the level of detail in the witness' statements." *Id*. (citing *United States v. Wilson*, 624 F.3d 640, 665 (4th Cir. 2010)).

The record reflects that after reviewing the plea agreement in great detail with Lambert, Cruz decided to sign it. The plea agreement included a stipulated USSG total offense level of 36, which was determined on two factors—Cruz's base offense level of 34 and a two-level gun enhancement. (ECF No. 107 at 5). At the plea hearing, the United States placed the terms of the plea agreement on the record, including the agreement between the parties that a two-level gun enhancement applied to Cruz's offense. (ECF No.

221 at 4-7). After the recitation by the United States, Cruz testified that he had gone over the plea agreement with his attorney step-by-step; that he initialed every page of the agreement; that he understood what the agreement did and what it required him to do; and that he wanted the Sentencing Court to accept the agreement. (*Id.* at 8). Cruz explicitly advised the Sentencing Court that he agreed to the two-level gun enhancement. (*Id.* at 18). When asked, Cruz affirmed that he had reviewed the appellate and habeas corpus waivers and persisted in his desire to waive his right to filing such actions, except on the basis of ineffective assistance of counsel. (*Id.* at 19-20).

Given the record, Cruz's testimony at the evidentiary hearing that he asked Lambert to file an appeal based on the gun enhancement—an enhancement to which Cruz expressly agreed—is simply not plausible. Cruz knew that the gun enhancement would be part of his sentence calculation when he signed the plea agreement, because he stipulated to it. At the plea hearing, Cruz testified that he fully understood the plea agreement, including the gun enhancement, and he wanted the Sentencing Court to accept the agreement. Cruz acknowledged that Lambert had discussed with him each aspect of the plea agreement, including the application of the USSG to his case. Statements made during a hearing to accept a guilty plea are afforded a strong presumption of veracity and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *U.S. v. Lemaster,* 403 F.3d 216, 221-222 (4th Cir. 2005). As the Fourth Circuit explained:

> [A] defendant's solemn declarations in open court ... carry a strong presumption of verity ... because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. ... Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations

14

that contradict the sworn statements.

*Id.*

Moreover, as the United States pointed out at Cruz's evidentiary hearing, his original § 2255 motion did not even mention his purported disappointment over Lambert's handling of the gun enhancement. Certainly, if the gun enhancement was Cruz's greatest concern, he would have mentioned the enhancement in his § 2255 motion. Instead, his complaints regarding the drug amount attributed to him and the size of his role in the conspiracy, which were the reasons given in his § 2255 motion for desiring an appeal, morphed into his alleged disappointment over the gun enhancement, which he stated at the evidentiary hearing was the reason for his request to file an appeal. The inconsistency between Cruz's written motion and his subsequent testimony creates further skepticism over the accuracy of his memory.

In contrast, Lambert's recollection of his post-sentencing conference with Cruz is consistent with the record. According to Cruz, he immediately expressed to Lambert his displeasure with the fourteen-year sentence and Lambert's failure to challenge the gun enhancement and requested an appeal. (ECF No. 256 at 13). Lambert recalls the meeting much differently, testifying that Cruz indicated a desire to rehabilitate and educate himself while incarcerated. They discussed the significant downward variance given by the Sentencing Court and the fact that there were no grounds for appeal. (Id. at 52). Lambert said that he and Cruz "left on a very positive note" and that Cruz never asked him to file a Notice of Appeal. (*Id.* at 52-53).

The record reflects that during the sentencing hearing, Lambert was permitted to argue the defendant's objections to the PSR. (ECF No. 222 at 4-7). Lambert focused his argument on the role that Cruz played in the conspiracy, attempting to minimize it. As

15

Lambert explained, he took this approach because he believed that minimizing Cruz's role was his best chance of receiving a downward variance of the sentence. Nothing was said about the gun enhancement. Cruz claims that he was displeased that Lambert did not challenge the gun enhancement; yet, immediately after Lambert finished arguing the objections, without mentioning the gun enhancement, the Sentencing Court asked Cruz if he was satisfied with the legal representation he received. (*Id.* at 8). Clearly, that would have been the perfect opportunity for Cruz to raise his concerns about the alleged deficiency of Lambert's argument. But he did not do so. To the contrary, Cruz testified that he was satisfied with his legal representation. (*Id.*).

The Sentencing Court then calculated the USSG sentence range, concluding that the range applicable to Cruz's offense level and Criminal History Category was 235 to 293 months' imprisonment; in other words, 19.5 years to 24.4 years. (*Id.* at 10). Lambert requested that the Sentencing Court vary downward from the USSG sentence range and impose a ten-year sentence on Cruz. (*Id.*). Cruz was then given an opportunity to say whatever he felt was appropriate in mitigation of the USSG sentence range. Cruz did not raise his alleged concerns about the gun enhancement, or about Lambert's performance. Instead, Cruz expressed remorse and assured the Sentencing Court that he intended to use his time in prison to rehabilitate himself and actually be a contributing member of society. (*Id.* at 12). Ultimately, the Sentencing Court did vary downward significantly, imposing a fourteen-year sentence of imprisonment, more than five years less than the lowest range of the guidelines. After the sentence was imposed, Cruz did not express any disappointment or displeasure. Instead, he volunteered to the Sentencing Court that there were courses he wanted to take in prison, and that he planned on obtaining a Master's degree. (*Id.* at 19).

16

Cruz's statements at the sentencing hearing in no way suggest that he was disappointed with his sentence. Indeed, Cruz received a substantial break from the Sentencing Court and appeared anxious to convince the Sentencing Court that he was going to use his time for self-improvement. Given Cruz's offense level and criminal history, his stipulation regarding the presence of firearms during commission of the offense, and the possibility of a life sentence, it is not plausible that Cruz would expect to receive the minimum statutory sentence available, or that he would be dissatisfied with the downward variance he received. On the other hand, Lambert's recollections of Cruz's statements after sentencing are entirely consistent with the events of and statements made during the sentencing hearing.

At the evidentiary hearing, Cruz conceded that he knew at the time of sentencing his appeal period expired in fourteen days. At one point in the hearing, Cruz was asked by his counsel what he did in response to this knowledge, and Cruz testified that he filed his own Notice of Appeal when he had not heard from Lambert in a week or so. (ECF No. 256 at 12). This testimony by Cruz is inconsistent with his later testimony that he had no doubt that Lambert understood the request for an appeal and believed Lambert would file one. (*Id*. at 13, 33-34). If Cruz was so certain that Lambert knew to file a Notice of Appeal, there was no reason for Cruz to attempt to file his own notice.

Cruz additionally testified that he did not hear from Lambert during his post-sentence confinement at the Carter County Detention Center, so both he and his family members tried to contact Lambert by telephone. (*Id*. at 14-15). Cruz stated his sister additionally sent an email to Lambert, but none of them ever heard back from him. However, Cruz did not offer testimony from any of his family members, nor did he produce telephone records or a copy of the unsuccessful email communication. Thus,

17

other than Cruz's testimony, no proof was offered of these alleged communications. Furthermore, despite having no success in reaching Lambert by telephone and email, Cruz made no attempt to write Lambert a letter and request the status of the appeal that Cruz told Lambert to file. (*Id.* at 30). In sum, there is no proof other than Cruz's testimony that he asked Lambert to file an appeal and Cruz's testimony is inconsistent with the rest of the record. Considering that Cruz carries the burden of proof in this proceeding, the undersigned **FINDS** that he fails to establish by a preponderance of the evidence that he asked Lambert to file an appeal, or that Lambert should have further discussed the merits of an appeal with Cruz.

## VI. Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 192), be **DENIED,** and that this civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge

for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Goodwin, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED**:  April 20, 2021

_____
Cheryl A. Eifert
United States Magistrate Judge